991 P.2d 615 (2000)
139 Wash.2d 757
Jack STAATS and Sherry Ann Staats, husband and wife, Respondents,
v.
James BROWN and the State of Washington, Department of Fish and Wildlife, Petitioners.
No. 65681-9.
Supreme Court of Washington, En Banc.
Argued February 10, 1999.
Decided January 6, 2000.
As Amended January 24, 2000.
*617 Christine Gregoire, Atty. Gen., Carl B. Paul, Asst. Atty. Gen., Olympia, for Petitioners.
Henderson & Grow, Clinton James Henderson, Neil Presley Cox, Jr., Clarkston, for Respondents.
*616 SANDERS, J.
A riverbank confrontation between property owner Jack Staats and fish and wildlife officer James Brown spawned this action for false arrest, false imprisonment, assault and battery, and violation of the federal Civil Rights Act, 42 U.S.C. § 1983. At issue is whether a fish and wildlife officer may effect a warrantless arrest for unlawful resistance based upon failure to provide information; whether this arrest, lawful or not, was accomplished through the use of excessive force; and, ultimately, whether Officer Brown enjoys immunity from suit under state and/or federal law. The trial court dismissed the action based upon state and federal claims of qualified immunity, whereas *618 the Court of Appeals, in an unpublished opinion, reversed and remanded for trial. We granted the petition for review filed by Officer Brown and the Washington State Department of Fish and Wildlife, and now affirm in part and reverse in part.

I.

FACTS
On June 1, 1993 Washington state wildlife agent Ken Woltering observed construction work on the bank of the Snake River near Heller Bar in Asotin County as well as debris which he believed had been pushed into the river by the work. The property was owned by Jack Staats; however, it is not claimed Staats personally performed any of the work. Woltering believed Staats had unlawfully caused construction work below the high watermark of the Snake River without that permit required by former RCW 75.20.100 (1992). Thereafter neither Staats, nor anyone on his behalf performed any construction work within or below the high watermark.
On the same day Woltering initially contacted Staats, June 1, 1993, Woltering also contacted fisheries patrol officer James Brown, the officer responsible for investigating alleged fisheries violations. Brown observed the construction site, spoke with Staats about the permitting process, and advised Staats he should apply for a permit. At no time did Staats engage in any shoreline construction work while in Brown's presence, or thereafter.
On June 8 Brown again returned to the site, this time with Roger Wilms, regional habitat manager for the department of fisheries, but again observed no work in progress.
On September 3, 1993 Brown returned for a third time to inspect the site and issue a citation to Staats for commencing construction without a permit. He had neither arrest nor search warrant. No work was in progress at that time, nor is it claimed any work had been performed below the high watermark after the initial June 1 contact. Staats emerged from his trailer and ordered Brown off the property. Brown refused to leave, informing 62-year-old Staats he intended to cite him for the construction violation, demanding further identification and information to fill out the citation. Staats refused to provide the requested identification. Brown wrote in his incident report he considered leaving and coming back at a later time, but rather determined he "now could deal with the situation" and, after some apparently quite heated discussion, arrested Staats for "refusing to cooperate to receive a citation," contrary to former RCW 75.10.040 (1992), repealed by Laws of 1998, ch. 190, § 124, which prohibits resistance to a fisheries patrol officer while performing his duties. Clerk's Papers (CP) at 53. In response Staats sidestepped and attempted to walk away only to be physically subdued by Officer Brown.
Brown reported Staats "bodily pulled away from me. At this point I believed the suspect forced me to the next level of physical control and I grabbed his head and thin hair to pull him to the ground...." CP at 54. Staats claims Brown placed him in a choke hold, forced him to the ground, dragged him backward across the rocks "and then threw Mr. Staats down face-first across a two foot boulder," CP at 4, and then "slammed Mr. Staats' head down into the two-foot boulder," id., causing his forehead to bleed. Allegedly Brown knelt on Staats' back and, when Staats tried to get up, grabbed his head and pushed him back down into a rock which painfully pressed against his chest. Brown also allegedly pulled Staats' ears straight out from his head causing extreme pain and suffering. Id.
Brown then allegedly searched Staats' residence and confiscated Staats' wallet after which Staats was transported to the Asotin County sheriff's office, processed, and released.
Subsequent to arrest for failure to provide information, but prior to release, Staats was cited for three misdemeanors: (1) commencing unlawful construction in violation of former RCW 75.20.100; (2) unlawful resistance by refusal to give information to an officer performing his duties, contrary to former RCW 75.10.040; and (3) resisting arrest, contrary to RCW 9A.76.040.
*619 Staats moved to dismiss all charges in Asotin County District Court pursuant to State v. Knapstad, 41 Wash.App. 781, 706 P.2d 238 (1985), aff'd, 107 Wash.2d 346, 729 P.2d 48 (1986). The court granted the motion, concluding unlawful resistance by refusal to provide information did not occur as a matter of law.
The state appealed to the Asotin County Superior Court which affirmed the dismissals, adopting all of the criminal trial court's findings and conclusions. The criminal matter ended when the Court of Appeals denied the state's request for review.
Staats then filed a civil complaint in Asotin County Superior Court alleging three violations of 42 U.S.C. § 1983 by Officer Brown in his personal capacity: (1) unconstitutional search, (2) unconstitutional seizure, and (3) unconstitutional use of excessive force by Brown. Staats also alleged state tort claims against Brown and the Washington State Department of Fish and Wildlife for false arrest, false imprisonment, and against Brown individually for assault and battery.
Staats moved for partial summary judgment, arguing that the result reached in his criminal trial collaterally estopped Brown from denying liability for either the illegal arrest of Staats or the use of excessive force against Staats. Brown cross-moved for summary judgment of dismissal on grounds of qualified immunity. The trial court denied Staats' motion, granted Brown's, and dismissed Staats' suit with prejudice on immunity grounds. Staats appealed to the Court of Appeals.
The Court of Appeals, in an unpublished opinion, affirmed the trial court's denial of Staats' motion for partial summary judgment, concluding the elements of collateral estoppel had not been satisfied, but reversed the trial court's dismissal on qualified immunity grounds, remanding for trial. CP at 6, 8. We granted Brown's petition for review to reconsider his claims of immunity.[1]

II.

ANALYSIS

Standard of Review
Claims of qualified immunity from suit under § 1983 must fail if the constitutional right allegedly violated was clearly established at the time of the act. Harlow v. Fitzgerald, 457 U.S. 800, 812, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We review claims of qualified immunity based on the assumption that all facts alleged in plaintiff's complaint are true. Kalina v. Fletcher, 522 U.S. 118, 118 S.Ct. 502, 505, 139 L.Ed.2d 471 (1997); Gomez v. Toledo, 446 U.S. 635, 637 n. 3, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Claims of qualified immunity under state law are subject to the ordinary summary judgment standard which requires all facts and inferences to be construed most favorably to the nonmoving party. CR 56.
A. Unlawful Arrest
The threshold issue is whether Staats' arrest for refusal to provide identification, allegedly contrary to former RCW 75.10.040, was unlawful. In pertinent part former RCW 75.10.040 provides:
It is unlawful to knowingly or wilfully resist or obstruct a fisheries patrol officer in the discharge of the officer's duties.
Former RCW 75.10.040(3).
Thus the statute requires the presence of two statutory elements: (1) knowing or willful resistance to (2) the discharge of the officer's duties.
The district court found both elements absent as a matter of law, reasoning: (1) one cannot "resist" by simply withholding identification or other information; and (2) the officer was not lawfully entitled to issue the citation for which he sought information and thus was not acting in the discharge of his "duties." If the district court was correct on either ground, Officer Brown's arrest of Staats was without legal authority.
As to the first pointsimple refusal to provide identification or information for a *620 citation cannot constitute resistance under this statutethe district court relied upon State v. White, 97 Wash.2d 92, 640 P.2d 1061 (1982) for the proposition that "a detainee's refusal to disclose his name, address, and other information cannot be the basis of an arrest." Id. at 106, 640 P.2d 1061.
In White a transient was arrested for failure to provide information contrary to RCW 9A.76.020. This statute provided in pertinent part:
"Obstructing a public servant. Every person who, (1) without lawful excuse shall refuse or knowingly fail to make or furnish any statement, report, or information lawfully required of him by a public servant, or (2) in any such statement or report shall make any knowingly untrue statement to a public servant, or (3) shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor."
White, 97 Wash.2d at 95-96, 640 P.2d 1061 (quoting former RCW 9A.76.020). The issue we there resolved was "whether criminal sanctions may be imposed upon an individual for failing to disclose correct information to a police officer." Id. at 96, 640 P.2d 1061. We held they could not, reasoning the statute was defective both in the sense that it failed to give fair notice of what activities were required or forbidden and also because it encouraged arbitrary and erratic stops and arrests. Id. at 99, 640 P.2d 1061. We held the standardless sweep of former RCW 9A.76.020 as set forth in subsections (1) and (2) "cannot be sufficiently narrowed by any limiting construction we might place upon it," so as to pass constitutional muster. White, 97 Wash.2d at 101, 640 P.2d 1061.
For all its failings former RCW 9A.76.020 did, at least, expressly criminalize the refusal to provide information. In contrast, the statute at issue here nowhere even references refusal to provide information but only forbids one to "resist." Thus the ordinary meaning of "resist" which "describes an opposition by direct action and quasi forcible means," resolves the issue in Staats' favor. Black's Law Dictionary 1310 (6th ed.1990). This refusal to provide information was passive, not active, and more in the nature of speech (or refusal to speak), than physical action. Accordingly, Officer Brown's conclusion that Staats' refusal to provide information was an act of criminal resistance for which Staats could be arrested pursuant to former RCW 75.10.040 was incorrect. See also State v. Hoffman, 35 Wash.App. 13, 16-17, 664 P.2d 1259 (1983) (one cannot be arrested for hindering, delaying, or obstructing a public servant based upon refusal to provide identification); cf. State v. Barwick, 66 Wash.App. 706, 833 P.2d 421 (1992) (refusal to provide identification insufficient basis for arrest).
Although the preceding consideration is sufficient unto itself to render the arrest unlawful, the district court's second, and independent, ground yields the same result.
Even were we to assume demanding information to support the issuance of a lawful citation is within the scope of the officer's duties, and one who willfully refuses to provide that information does criminally "resist" the officer contrary to former RCW 75.10.040, the aforementioned presupposes that the alleged underlying offense is one for which a citation may be issued, for, if it is not, no "duty" to obtain information in support of the citation could possibly arise. We once again agree with the district court that there can be no criminal resistance if the officer demanded information from Staats to support the issuance of a citation which he was not legally entitled to write.
As a general rule all criminal proceedings must be initiated by complaint, not citation, unless otherwise provided. CrRLJ 2.1(a)(1) ("Except as otherwise provided in this rule, all criminal proceedings shall be initiated by a complaint."). By the same token a citation may be issued only when "a person is arrested or could have been arrested pursuant to statute for a violation of law which is punishable as a misdemeanor...." CrRLJ 2.1(b)(1). The ultimate inquiry under this prong of the statute is therefore whether Staats could have been lawfully arrested for commencing construction without a permit outside the officer's presence. If he could not, the officer would have to proceed by complaint, not citation. The district court, superior court, and Court of Appeals all concluded *621 no citation could be issued here, and we agree.
First, we must recall any warrantless arrest for a misdemeanor committed outside the officer's presence is contrary to the common law. See, e.g., State v. Hornaday, 105 Wash.2d 120, 123, 713 P.2d 71 (1986). This common law rule may be overcome by legislation to the contrary; however, a statute will not be construed in derogation of the common law unless the legislature has clearly expressed that purpose. Price v. Kitsap Transit, 125 Wash.2d 456, 463-64, 886 P.2d 556 (1994); Irwin v. Rogers, 91 Wash. 284, 287, 157 P. 690 (1916).
Former RCW 10.31.100 does not change this common law but proves it by enumerating certain exceptions. In pertinent part the statute provides:
Arrest without warrant. ... A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer, except as provided in subsections (1) through (10) of this section.
Former RCW 10.31.100 (Supp.1993) (emphasis added). Former RCW 75.20.100, which prohibits commencing construction without a permit, is not among the enumerated exceptions.
Brown then argues, notwithstanding the absence of authority to arrest pursuant to former RCW 10.31.100, authority to arrest for this misdemeanor committed outside the officer's presence may nevertheless be found in former RCW 75.10.020(2) (1992), repealed by Laws of 1998, ch. 190, § 124:
(2) Fisheries patrol officers and ex officio fisheries patrol officers may arrest without warrant a person they have reason to believe is in violation of this title or rules of the director.
(Emphasis added.)
The Court of Appeals concluded RCW 75.10.020 conflicted with RCW 10.31.100, holding RCW 10.31.100 controlled because it was the last of the two statutes revised. Although ultimately we reach the same result, we prefer reconciliation of arguably conflicting statutes when possible to give effect to each while providing a reasonable construction. Tommy P. v. Board of County Comm'rs, 97 Wash.2d 385, 391-92, 645 P.2d 697 (1982); State ex rel. Royal v. Board of Yakima County Comm'rs, 123 Wash.2d 451, 459-60, 869 P.2d 56 (1994).
Reconciliation is here possible because the legislature chose to use the present tense in the latter statute, providing that an arrest without warrant is allowed when the officer has reason to believe someone "is in violation of this title or rules of the director." Former RCW 75.10.020(2) (emphasis added). By the same token the substantive statute under which Staats was to be cited proscribed commencing construction.
If any person ... commences construction on [a governed project] without first having obtained written approval ... the person... is guilty of a gross misdemeanor.
Former RCW 75.20.100 (emphasis added).[2]
The violation, if any, which Brown had probable cause to believe Staats committed occurred three months prior to the arrest, outside Brown's presence even then, and was neither continuing nor recurring at the time of the attempted citation. See Hornaday, 105 Wash.2d at 126, 713 P.2d 71 (Alcohol on a minor's breath may provide probable cause to believe that the crime of possession of alcohol by the minor "has been committed, but not that it is presently being committed."). RCW 75.10.020(2) does not provide authority to arrest under the facts as they were reasonably understood by the arresting officer,[3] and issuance of a citation for same *622 was therefore not in the performance of his official duties.
Our holding in State ex rel. McDonald v. Whatcom County Dist. Court, 92 Wash.2d 35, 36-37, 593 P.2d 546 (1979), supports this result as well. There we construed a statute which provided:
"A law enforcement officer investigating at the scene of a motor vehicle accident may arrest the driver of a motor vehicle involved in the accident if the officer has probable cause to believe that the driver has committed in connection with the accident a violation of the traffic laws or regulations."
McDonald, 92 Wash.2d at 36-37, 593 P.2d 546 (quoting RCW 46.64.017). In McDonald the investigating officer arrested the driver who was involved in a one-car accident at the hospital where the driver was taken for treatment. Id. at 36, 593 P.2d 546. Observing the statute was in derogation of the common law rule prohibiting a misdemeanor arrest for crimes not committed in the officer's presence we held that it must be strictly construed, id. at 37, 593 P.2d 546, to prohibit the investigating officer from making the arrest at the hospital because the arrest did not take place "`at the scene of a motor vehicle accident.'" Id.[4] We further held the rule of lenity compelled the same result, id. at 37-38, 593 P.2d 546, i.e., "Where two possible constructions are permissible, the rule of lenity requires us to construe the statute strictly against the State in favor of the accused." State v. Gore, 101 Wash.2d 481, 485-86, 681 P.2d 227, 39 A.L.R.4th 975 (1984) (citations omitted).
Finally, Brown argues former RCW 75.10.020 should be construed to authorize a warrantless arrest based upon a legislative amendment subsequent to our decision in State v. Moser, 41 Wash.2d 29, 246 P.2d 1101 (1952). In Moser we interpreted a former version of one arrest statute here at issue which allowed an arrest "`without writ, order or process, [of] any person in the act of violating any of the provisions of this title....'" Id. at 30, 246 P.2d 1101 (quoting RCW 75.08.190). We there held this statute authorized arrest without warrant only when the defendant was actually in the act of violating the title. Id. at 32, 246 P.2d 1101. Brown argues since the legislature amended the statute after Moser it is "presumed to be aware of existing case law which has construed a statute," Pet. for Review at 9-10 (citing State v. Davis, 47 Wash. App. 91, 99, 734 P.2d 500 (1987)), notwithstanding Moser was decided 32 years before the subject amendment. Laws of 1983, 1st Ex.Sess., ch. 46, §§ 31, 33. But Brown neither explains the legislature's remarkably slow reaction to this 1952 decision nor identifies any insights from the legislative record, or any other source, supporting the view that amending the statute to its present form establishes an arrest may be made for a misdemeanor not committed in the officer's *623 presence notwithstanding the absence of statutory text to that effect.
The arrest of Staats for violations of former RCW 75.10.040 was therefore unlawful in two respects: (1) simply withholding information is not criminal resistance under this statute as a matter of law, and (2) Brown was not acting in discharge of a duty when he demanded information to support issuance of a citation he had no lawful authority to issue.
As violation of former RCW 75.10.040 was the only alleged basis of this arrest, the arrest was without authority of law.
B. Qualified Immunity against § 1983 Civil Rights Action
Staats alleged causes of action under 42 U.S.C. § 1983 predicated on claims of false arrest, excessive force, and illegal search.[5] 42 U.S.C. § 1983 "provides `a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.' The high purposes of this unique remedy make it appropriate to accord the statute `a sweep as broad as its language.'" Wilson v. Garcia, 471 U.S. 261, 271-72, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (citations omitted). As remedial legislation § 1983 is to be "construed generously to further its primary purpose." Gomez, 446 U.S. at 639, 100 S.Ct. 1920. "To state a [§ 1983] cause of action, then, a plaintiff need only allege that (1) defendant acted under color of state law, and (2) defendant's conduct deprived plaintiff of rights protected by the Constitution or laws of the United States." Sintra, Inc. v. City of Seattle, 119 Wash.2d 1, 11-12, 829 P.2d 765 (1992).
An arrest is a "seizure" under the United States Constitution and when made without probable cause is a violation of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).
42 U.S.C. § 1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
No doubt Brown acted under color of state law, see Hafer v. Melo, 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); however, a § 1983 action lies only for violation of a federal right. Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Davis v. Scherer, 468 U.S. 183, 193-94, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).
1. False Arrest
The first issue is therefore whether this false arrest is a "clearly established" violation of the Fourth Amendment..
The United States Supreme Court has created "qualified immunity" for government officials who are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. 2727. The test of the official's conduct is an objective one measured by reference to clearly established law. Id. See also Davis, 468 U.S. at 190, 104 S.Ct. 3012 ("Harlow ... rejected the inquiry into state of mind in favor of a wholly objective standard."). For purposes of qualified immunity, the court must accept the allegations of the complaint as true. Kalina, 118 S.Ct. at 505. Denial of qualified immunity is not a finding of liability, but simply a delegation of that question to the trier of fact. Robinson v. City of Seattle, 119 Wash.2d 34, 69, 830 P.2d 318 (1992).
When determining a motion to dismiss on qualified immunity grounds the court must ask, as a matter of law, whether the *624 federal right assertedly violated was clearly established at the time the event described in the plaintiff's complaint occurred. Elder v. Holloway, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994). A proper answer to the question requires the appellate court to consider all relevant precedents, not simply those cited or discovered by the trial court, id. at 512, 114 S.Ct. 1019; although a constitutional right may nevertheless be "clearly established" even absent a specific holding on the particular question at issue. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
The central purpose of qualified immunity is to protect public officials from undue interference with their duties and from potentially disabling threats of liability. Elder, 510 U.S. at 514-15, 114 S.Ct. 1019 (quoting Harlow, 457 U.S. at 806, 102 S.Ct. 2727). But the Court must likewise guard against potential abuse through unwarranted application of the doctrine:
By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective reasonableness of an official's acts.
Harlow, 457 U.S. at 819, 102 S.Ct. 2727. See also Mitchell v. Forsyth, 472 U.S. 511, 524, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (By denying absolute immunity to the Attorney General, even in matters of national security, he may be forced to "pause to consider whether a proposed course of action can be squared with the Constitution and laws of the United States. But this is precisely the point of the Harlow standard.").
No appellate court has previously construed the meaning of resistance in former RCW 75.10.040 nor has the Supreme Court ever explicitly applied the Fourth Amendment warrant requirement to an arrest for a misdemeanor committed outside of the officer's presence. See 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 5.1(b) at 397 (2d ed.1987); Welsh v. Wisconsin, 466 U.S. 740, 756, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (White, J., dissenting). Of the seven reported cases on the latter point none equated such a state law violation to a deprivation of Fourth Amendment guarantees: Torrey v. City of Tukwila, 76 Wash.App. 32, 39-40, 882 P.2d 799 (1994); Fields v. City of South Houston, 922 F.2d 1183, 1189 (5th Cir.1991); Barry v. Fowler, 902 F.2d 770, 772 (9th Cir.1990); Boyd v. Angarone, 729 F.Supp. 1194, 1199 (N.D.Ill.1990); Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1138 (4th Cir.1982); Diamond v. Marland, 395 F.Supp. 432 (S.D.Ga.1975); Street v. Surdyka, 492 F.2d 368, 370-71 (4th Cir. 1974).
Even were we persuaded this arrest in violation of state law necessarily violated the Fourth Amendment, the issue before us is not that but whether Staats' Fourth Amendment right to be free of such an arrest was "clearly established" at the time of his arrest. It was not. Accordingly we reverse the Court of Appeals, and uphold Officer Brown's qualified immunity from suit under § 1983 for falsely arresting Staats as well as all companion claims for false imprisonment and assault and battery arising by reason of said arrest. See Bender v. City of Seattle, 99 Wash.2d 582, 591, 664 P.2d 492 (1983) (an assault accompanies false arrest). But claims arising from the use of excessive force are another matter.
2. Excessive Force
Use of excessive force to accomplish an arrest, even where supported by probable cause and/or a warrant, clearly violates the Fourth Amendment. See Graham, 490 U.S. at 388, 109 S.Ct. 1865; Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir.1993). Qualified immunity is not available simply because the inquiry in a factually specific sense necessarily measures whether the use of force as alleged in the complaint is excessive. Id. at 1436. Rather the Supreme Court has held claims of excessive force in the course of making an arrest are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham, 490 U.S. at 388, 109 S.Ct. 1865.
*625 Certainly the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, not 20/20 hindsight. It is a standard of the moment as police officers are often forced to make split-second judgments in tense, uncertain, and rapidly evolving circumstances. Id. at 397, 109 S.Ct. 1865. Moreover, "`Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. at 396, 109 S.Ct. 1865 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)). But these qualifications clarify the rule, they do not obscure it.
Graham provided direction to the kinds of facts and circumstances a court need attend when applying the "test of reasonableness": (1) severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. Id. at 396, 109 S.Ct. 1865.
The crime for which Staats was arrested was failure to provide information. Even going beyond the allegations of the complaint, Officer Brown's report only hints at some unarticulated and speculative future risk. Nothing in the record indicates that Brown felt any immediate threat of safety for himself or others. At most Brown claims Staats was attempting to evade arrest through flight. Supplemental Br. of Pet'r at 21.
According to Staats, the allegations of whose complaint must be accepted as true, he merely turned and walked away. CP at 3. We cannot say under the facts as alleged Brown's decision to push a 62-year-old man to the ground, kneel on his back, injure his neck, pull his ears, press his chest into the rocks, and bloody his head is "objectively reasonable" as a matter of law. See also Barlow v. Ground, 943 F.2d 1132, 1136 (9th Cir.1991) (reasonableness of force is fact question precluding summary judgment). See also Palmer, 9 F.3d at 1436 (plaintiff's claim that handcuffs were so tightly fastened as to cause pain and bruises precluded summary judgment for claim brought under § 1983); State v. Boldt, 40 Wash.App. 798, 800, 700 P.2d 1186 (1985) (question of whether or not police officer used excessive force in effecting arrest is for the trier of fact).[6]
Staats' due process constitutional right to be free of arrest by excessive force was clearly established at the time of his arrest, and dismissal of this claim on qualified immunity grounds was error.
3. Illegal Search
Staats also claims Brown entered his residence without authorization or permission and then confiscated Staats' wallet.[7] *626 Qualified immunity to a claim of unconstitutional search in violation of the Fourth Amendment is likewise available if the unconstitutionality of the search under the alleged circumstances was not clearly established at the time. Anderson, 483 U.S. at 641, 107 S.Ct. 3034.
However the right to be free of a warrantless entry into one's home, except in rare circumstances, is not merely "sufficiently clear" under the Fourteenth and Fourth Amendmentsit is crystalline. Warrantless searches are per se unreasonable and allowed only when a few specifically established and jealously guarded exceptions are present, the burden to establish same falling upon the party who conducted the warrantless search. Coolidge v. New Hampshire, 403 U.S. 443, 454, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Analyzing a residential search in the context of a misdemeanor arrest the Supreme Court has held:
Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.
Welsh, 466 U.S. at 750, 104 S.Ct. 2091 (citation and footnote omitted).
Here, accepting Staats' allegations as true, Kalina, 118 S.Ct. at 505, we have a defendant arrested for a misdemeanor handcuffed on the ground by an officer who has never expressed any fear nor any need for evidence. No recognized exigent circumstances justifying a warrantless search or intrusion into his residence appear to be present. There is no question of "hot pursuit." See Maryland Penitentiary v. Hayden, 387 U.S. 294, 310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring). The entry is not part of a search incident to arrest. See Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Nor does Brown argue that he had any fear for his safety that might have required some form of protective sweep. See Maryland v. Buie, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).
Qualified immunity is not available to Officer Brown for the alleged search as the Fourth Amendment right to be free of a warrantless residential search in the circumstances as alleged is clearly established.
C. No Qualified Immunity from State Tort Suit
In addition to his § 1983 claim, Staats also alleges three state tort causes of action against Officer Brown: (1) false arrest; (2) false imprisonment; and (3) assault and battery. CP at 6-8. Officer Brown claims the suit for these claims should be barred under a judicially created species of state qualified immunity, relying upon a proposed extension of Guffey v. State, 103 Wash.2d 144, 690 P.2d 1163 (1984).
In Guffey we surveyed the evolution of qualified immunity for false arrest under various circumstances through Bender v. City of Seattle, 99 Wash.2d 582, 664 P.2d 492 (1983). With respect to alleged immunity in cases of arrest accomplished without a warrant, we limited the immunity to situations where the peace officer reasonably believed the arrested party committed a felony, Plancich v. Williamson, 57 Wash.2d 367, 357 P.2d 693, 92 A.L.R.2d 559 (1960), or to misdemeanor *627 arrests where the arresting officer had reasonable cause to believe the crime was being committed in his presence and he acted in good faith on that belief. Sennett v. Zimmerman, 50 Wash.2d 649, 651, 314 P.2d 414 (1957). We also recognized the Courts of Appeals had found a common law immunity from a false arrest action where the statute relied upon for the arrest was subsequently declared unconstitutional. Daniel v. State, 36 Wash.App. 59, 671 P.2d 802 (1983).
Guffey extended the rationale set forth in Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) and Daniel to recognize qualified immunity for an officer who makes an arrest pursuant to an allegedly unconstitutional statute, holding:
[A]n officer has a qualified immunity from liability for false arrest and imprisonment when the officer (1) carries out a statutory duty, (2) according to procedures dictated to him by statute and superiors, and (3) acts reasonably.
Guffey, 103 Wash.2d at 152, 690 P.2d 1163. Guffey was briefly stopped by a state trooper based upon similarity in name and physical description to an individual sought under an outstanding felony warrant. Guffey was promptly released upon confirmation that he was not the individual subject to the warrant, but he sued anyway. We found the mistake in identification reasonable under the circumstances and held the trooper immune from liability for false arrest, false imprisonment, and assault.
Assuming the continued existence of judicially created qualified immunity for arresting officers under some circumstances,[8] we do not find those circumstances here.
We begin by noting the difference between that state immunity available under Guffey and the qualified immunity available under federal law from suit under § 1983. Although the Guffey court sought guidance from § 1983 precedents, Guffey, 103 Wash.2d at 150-51, 690 P.2d 1163, the three-part test set out by Guffey is not the standard used in § 1983 actions which is based upon whether or not the constitutional right allegedly violated was clearly established at the time. The proper analysis for state qualified immunity remains the three-part test this court set out in Guffey.[9]
But unlike Guffey, which dealt with actions predicated on a law subsequently determined unconstitutional, the officer here consummated the arrest contrary to existing court rule and statute.[10] An officer does not fulfill his statutory duty by violating it.[11] Nor can an arrest amounting to a statutory violation be "reasonable" for the reasons previously discussed. Absent limited and carefully drawn exceptions where the societal costs of obtaining a warrant are so high they outweigh the warrant requirement, "warrantless searches and seizures are per se unreasonable." State v. Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980).
Nor is state qualified immunity available for claims of assault and battery *628 arising out of the use of excessive force to effectuate an arrest. See Coldeen v. Reid, 107 Wash. 508, 515, 182 P. 599 (1919) (police officers prohibited from acting oppressively or wantonly injuring a person attempting to escape from a misdemeanor arrest).
We also note the probable consequence of generally immunizing police officers against civil claims for false arrest and battery. As explained in State v. Valentine, civil actions for false arrest are preferred to the alternative physical resistance. 132 Wash.2d 1, 18 n. 13, 935 P.2d 1294 (1997) (citing People v. Curtis, 70 Cal.2d 347, 450 P.2d 33, 37, 74 Cal.Rptr. 713 (1969)). See also Harlow, 457 U.S. at 814, 102 S.Ct. 2727 ("In situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of constitutional guarantees." (citations omitted)). Dismissal of Staats' suit on immunity grounds would deny an after the fact damage remedy, or any remedy, to the person unlawfully arrested. Extension of judicially invented qualified immunity to these circumstances is unwarranted in the absence of specific legislation.

III.

CONCLUSION
Officer Brown's arrest of Jack Staats was contrary to existing law. State qualified immunity does not bar Staats' state law tort action for false arrest, false imprisonment, and assault and battery. We therefore affirm the Court of Appeals' reversal of the trial court's dismissal, and remand for trial on Staats' state law tort actions.
Staats' rights under the federal constitution to be free of a warrantless search of his residence, and to be free of arrest effectuated with excessive force, were both clearly established at the time of his arrest. We therefore affirm the Court of Appeals' reversal of the trial court and remand for trial on these claims actionable under 42 U.S.C. § 1983.
However, Staats' arrest under this state statute under these circumstances is not a heretofore clearly established violation of the Fourth Amendment. We therefore affirm the trial court, and reverse the Court of Appeals, and hold that Officer Brown is entitled to qualified immunity from Staats' § 1983 claim for false arrest. As Staats has substantially prevailed on this appeal, he shall recover his statutory costs with a possible award of reasonable attorney fees under 42 U.S.C. § 1988 to be determined on remand.
SMITH, J., concurs.
JOHNSON, J. (concurring).
I agree with the result reached by the majority in this case, but disagree with the majority's analysis on the issue of unlawful arrest, and in particular the majority's reading of former RCW 75.10.020 (1992), repealed by Laws of 1998, ch. 190, § 124.[1]
Former RCW 75.10.020(2) reads as follows: "Fisheries patrol officers and ex officio fisheries patrol officers may arrest without warrant a person they have reason to believe is in violation of this title or the rules of the director." The prohibition against warrantless misdemeanor arrests where the violation occurs outside the presence of the officer is a common law rule. State v. Bonds, 98 Wash.2d 1, 9-10, 653 P.2d 1024 (1982). This statute clearly provides the necessary legislative authority for fish and wildlife officers to make warrantless arrests for misdemeanor offenses under Title 75 RCW, without addressing whether the act of a violation itself took place in the officer's presence. Compare RCW 77.12.090 (granting equivalent authority) and State v. Mierz, 127 Wash.2d 460, 472 n. 8, 901 P.2d 286, 50 A.L.R.5th 921 (1995) (noting statutory authority of wildlife officers to arrest without warrant) with former RCW 75.10.010 (1992) (allowing enforcement of any criminal law by fisheries patrol officer if violation occurs in his or her presence), repealed by Laws of 1998, ch. 190, § 124 and former RCW 75.08.190 (1955) (granting authority to "arrest without writ, order or process, any person in the act of violating any of the provisions of this title...." (emphasis added)), repealed by Laws of 1983, 1st Ex.Sess., ch. 46, § 185.
*629 Thus, if Officer Brown had wished to issue a citation to Staats during his initial visit on June 1, 1993, or even upon his return a week later, such an arrest would have been statutorily justified. At that time, Officer Brown had probable cause to arrest Staats for commencing construction without a permit: a gross misdemeanor under former RCW 75.20.100 (1992).
Officer Brown's delay of more than three months, however, took his actions outside the scope of the statute. By that time, common sense suggests the hearsay information he had received from Agent Woltering had grown stale. See, e.g., State v. Perea, 85 Wash.App. 339, 343, 932 P.2d 1258 (1997) (noting test for staleness of information to establish probable cause is one of common sense). Officer Brown had no reason to believe that, at this point, Staats was "in violation" of the law; Staats could easily have acquired a permit during the past three months. The officer should, therefore, have either sought a warrant or proceeded by complaint. See CrRLJ 2.1 (prosecution must proceed by complaint unless suspect could have been arrested by the officer).
As a result, Officer Brown was not discharging his duties within the context of former RCW 75.10.040 (1992), repealed by Laws of 1998, ch. 190, § 124. This alone was enough to render the arrest of Staats under this statute unlawful. I would, therefore, decline to reach the constitutionality of former RCW 75.10.040, as the analysis is not necessary for the disposition of this case.
ALEXANDER, J., concurs.
MADSEN, J. (concurring/dissenting).
I agree with the majority that summary judgment was improperly granted on Staat's 42 U.S.C. § 1983 claim alleging the use of excessive use of force by Officer Brown. In addition, the majority appropriately concludes that Staats has sufficiently argued his claim that his home was illegally searched and that this claim is actionable under 42 U.S.C. § 1983.
I agree with Justices Johnson and Talmadge, however, that the majority misstates the law regarding the authority of a fish and wildlife officer. As they explain, former RCW 75.10.020(2) (1992)[1] authorized a fish and wildlife officer to arrest an individual believed to have committed a misdemeanor violation of Title 75 RCW whether the violation occurred within or outside the presence of the officer.
Turning to the question whether there is a cause of action for unlawful arrest, Staats was arrested for violating former RCW 75.10.040(3) (1992)[2]. That statute provided that it is unlawful to knowingly or willfully obstruct a fisheries patrol officer in the discharge of official duties. Staats had commenced construction without a permit and was in continuing violation of former RCW 75.20.100 (1992) (a gross misdemeanor). Officer Brown was therefore entitled to issue a citation for this violation, and was engaged in this official duty when Staats refused to provide the information necessary for Brown to issue the citation. Accordingly, Officer Brown had probable cause to arrest Staats for a violation of former RCW 75.10.040(3) because Staats obstructed Brown's issuance of the citation. Brown had authority to arrest Staats. Thus, there was no unlawful arrest on which to premise a cause of action either under 42 U.S.C. § 1983 or state tort law.
For these reasons, I concur in part and dissent in part.
TALMADGE, J. (concurring/dissenting).
I agree with the majority that the trial court incorrectly granted summary judgment to the defendants on Jack Staats' claim under 42 U.S.C. § 1983 alleging excessive use of force by Washington State Department of Fish and Wildlife officer James Brown. But I part company with the majority because the only claim remaining to Staats after proper application of our rules on appeal, and state and federal law on qualified immunity, is his claim of excessive use of force. The majority plainly misstates the law on the authority of fish and wildlife officers. *630 Thus, I would affirm the dismissal of all claims against Brown except the excessive use of force claim, which I would remand to the trial court.
Initially, the majority reaches an issue not properly before us. Staats claims Brown entered his home on September 3, 1993 without a warrant and took his wallet, violating 42 U.S.C. § 1983. If this allegation were true, and if the issue had been properly preserved and argued by Staats, then this would be a clearly established constitutional right and Brown would have no qualified immunity. However, although Staats mentioned this issue in passing in his Brief of Appellant,[1] it is not mentioned in the brief in the context of an assignment error, as is required by RAP 10.3(a)(3).[2] Staats was obliged under our Rules of Appellate Procedure to appropriately raise the § 1983 issue before the Court of Appeals. See RAP 10.3(a)(3).
We have on occasion allowed an appeal of issues not previously raised before the court. RAP 1.2(a) states: "These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits." This rule makes clear a technical violation of the rules will not bar appellate review "where the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief[.]" State v. Olson, 126 Wash.2d 315, 322, 893 P.2d 629 (1995) (quoting Daughtry v. Jet Aeration Co., 91 Wash.2d 704, 592 P.2d 631 (1979)). But where the issue associated with the error is not plainly articulated in the assignment of error and not argued in the brief, we will refuse to consider such issue. See Olson, 126 Wash.2d at 323, 893 P.2d 629.
Moreover, this issue is not discussed at all in the Court of Appeals' opinion. Insofar as the Court of Appeals did not even address the issue, we must assume the Court of Appeals did not believe the issue was before it. If Staats was aggrieved by the failure of the Court of Appeals to address the issue, then he was obliged to raise the issue appropriately in his answer to Brown's petition for review. See RAP 13.4(d); RAP 13.7(b); Shumway v. Payne, 136 Wash.2d 383, 392-93, 964 P.2d 349 (1998); see also Estate of Jordan v. Hartford Accident & Indent. Co., 120 Wash.2d 490, 496, 844 P.2d 403 (1993) (citing to RAP 13.7(b)). This issue is not mentioned anywhere in Staats' Response to the Petition for Review. As we stated in Shumway, we review on appeal "only the questions raised in the petition and in the answer to the petition, unless the court orders otherwise." Shumway, 136 Wash.2d at 392-93, 964 P.2d 349; see also RAP 13.7(b); Jordan, 120 Wash.2d at 496, 844 P.2d 403 (refusing to review appellate court's decision where respondent failed to assign error to that court's ruling). In failing to raise the issue in his answer, Staats waived the issue before this Court. See Erdmann v. Henderson, 50 Wash.2d 296, 298, 311 P.2d 423 (1957); see also Young v. Key Pharm., Inc., 130 Wash.2d 160, 166 n. 3, 922 P.2d 59 (1996) (refusing to consider an issue where plaintiff failed to raise it in his answer to the petition for review). In light of the foregoing, we should not reach the question of whether Brown's alleged intrusion into Staats' trailer to get Staats' wallet violated 42 U.S.C. § 1983.
The most significant flaw in the majority's analysis is its determination that the warrantless arrest authority of a fish and wildlife officer was not clearly established for purposes of qualified immunity. Our decision in Guffey v. State, 103 Wash.2d 144, 690 P.2d 1163 (1984), is generally controlling with respect to the qualified immunity enjoyed by law enforcement officers in Washington for claims under state law. A law enforcement officer may be qualifiedly immune from state claims for false arrest or imprisonment, assault, and battery, if the officer was (1) carrying out a statutory duty, (2) according to the procedures dictated to him by statute and superiors, and (3) while acting reasonably. *631 See Guffey, 103 Wash.2d at 152, 690 P.2d 1163.
Here, there is nothing in the record to suggest that in attempting to cite, and eventually to arrest Staats, Brown failed to carry out a statutory duty, or that he carried out the duty in a manner contrary to Title 75 RCW. Furthermore, Brown had no knowledge of any alleged conflict between RCW 75.10.020(2) and RCW 10.31.100. Thus, his reliance on the authority of Title 75 RCW is reasonable. When Brown went to Staats' residence, Brown was carrying out the duties associated with his fisheries position (i.e., attempting to cite Staats for the hydraulics violation). Consequently, he is qualifiedly immune for claims under state law.
The test for qualified immunity under federal law is an objective one, measured by reference to clearly established law. See Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Court of Appeals in Altshuler v. City of Seattle, 63 Wash.App. 389, 819 P.2d 393 (1991) (citing United States Supreme Court decisions in Harlow, and Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)), review denied, 118 Wash.2d 1023, 827 P.2d 1392 (1992), indicated law enforcement officers are entitled to qualified immunity from liability in performing discretionary functions if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Altshuler, 63 Wash.App. at 393, 819 P.2d 393 (quoting Harlow, 457 U.S. at 818, 102 S.Ct. 2727). In order to demonstrate a constitutional right is "clearly established," the plaintiff must prove a reasonable official would understand that what he or she was doing violated a right. See generally Anderson, 483 U.S. at 640, 107 S.Ct. 3034 ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but, it is to say that in the light of pre-existing law, the unlawfulness must be apparent."); see also Harlow, 457 U.S. at 818, 102 S.Ct. 2727.
In the present case, the central questions we must confront are whether Staats had a right to be free from a warrantless arrest and whether such a right was "clearly established" under Washington law. The majority's laborious analysis of Washington law regarding warrantless arrests by fish and wildlife officers and the nature of the arrest by Brown for Staats' violation of former RCW 75.20.100 (1992) clearly indicate Brown had authority to make a warrantless arrest. Even if he did not, Staats' right to be free of a warrantless arrest under the circumstances was certainly not a "clearly established" right foreclosing the application of qualified immunity in favor of the law enforcement official.
I agree with the majority that Brown arrested Staats for refusing to cooperate in receiving a citation for the hydraulics violation. However, as former RCW 75.10.040(3) (1992)[3] states, "[I]t is unlawful to knowingly or wilfully resist or obstruct a fisheries patrol officer in the discharge of the officer's duties." (Emphasis added.) The word "obstruct" means "to be or come in the way of: hinder from passing, action, or operation: IMPEDE, RETARD." Webster's Third New International Dictionary 1559 (1986). By refusing to provide the information Brown needed to complete the citation, Staats was interfering with or impeding Brown's duties as a fisheries patrol officer. Thus, Brown had the authority to arrest Staats for violating a provision of Title 75 RCW.
In addition to Brown's authority to arrest Staats for refusing to cooperate, Brown had authority to arrest Staats for the hydraulics violation without a warrant. By its plain terms, former RCW 75.10.020(2) (1992)[4] specifically gives fish and wildlife officers the authority to make warrantless arrests for violations of the Fisheries Code:
Fisheries patrol officers and ex officio fisheries patrol officers may arrest without warrant a person they have reason to believe is in violation of this title or rules of the department. *632 (Emphasis added.) Despite such unambiguous statutory language, the majority studiously avoids any serious reference to this plain grant of warrantless arrest authority. The majority takes the position this specific language is inoperative because former RCW 10.31.100 (Supp.1993), the general statute dealing with the arrest authority of police officers, applies instead. Consequently, Brown would not have had authority to arrest Staats for a misdemeanor unless Staats had committed the misdemeanor in Brown's presence. The majority also contends no exception to specifically delineated warrant requirements was set forth in former RCW 10.31.100 for fish and wildlife officers.
The majority's analysis misreads the Fisheries Code, Title 75 RCW, which is self-contained, and fails to apply our long-standing principles of statutory interpretation. Former RCW 75.10.010 (1992),[5] the section immediately preceding the one at issue here, provides fisheries officers with the power to make warrantless arrests for general criminal law violations committed in their presence. See former RCW 75.10.010(2). This section is obviously unnecessary if former RCW 10.31.100 controls the arrest authority of fisheries officers. Clearly, the Legislature intended to confer broader authority on fish and wildlife officers in section .020. However, nothing in former RCW 10.31.100 indicates it applies to fish or wildlife officers at all, as no reference is made to Title 75 RCW or Title 77 RCW.[6]
In fact, in the most recent session of the Legislature, the Legislature combined the provisions of Title 75 RCW and Title 77 RCW regarding the enforcement power of fish and wildlife officers. Laws of 1998, ch. 190, §§ 1, 114, 124. The Legislature specifically reauthorized fish and wildlife officers to engage in warrantless arrests of persons found to be violating either Title 75 RCW or Title 77 RCW. Laws of 1998, ch. 190, § 114.
Again, the authority of fish and wildlife officers is self-contained and has no relationship whatsoever to RCW 10.31.100. This is consistent with our rule of statutory construction, which provides that a specific statute controls over a general statute on the same topic. Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n, 123 Wash.2d 621, 630, 869 P.2d 1034 (1994). Furthermore, the language in former RCW 75.10.020(2) is unambiguous: "[f]isheries patrol officers ... may arrest without warrant a person they have reason to believe is in violation of this title[.]" (emphasis added). The operative word in subsection (2) is the word "may." We have previously held that the word "may" has a permissive or discretionary meaning. See Yakima County Fire Protection Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 381, 858 P.2d 245 (1993). Thus, former RCW 75.10.020(2) permits the fisheries officer to "arrest without warrant a person they have reason to believe is in violation of this title[.]" (emphasis added). This subsection places the discretion with the fisheries officer to determine if there is probable cause to believe a violation has occurred. Furthermore, this subsection does not require that the violation occur in the presence of the officer before the officer may arrest an offender; rather it merely requires the officer to have a reasonable belief that the offender "is in violation of this title [.]" Former RCW 75.10.020(2).
The rationale for the authority of fish and wildlife officers to make warrantless searches, seizures, and arrests is manifest. If an officer was compelled to secure a warrant before arresting an offender, then the offender could abscond with the illegal fish or wildlife in his or her possession. Moreover, if the intent of the Legislature were to require a fish and wildlife officer to actually view the misdemeanor violation as it occurred, such intent would prevent an officer from arresting most offenders for most fish and wildlife violations. The officer would literally have to be present at the time the individual pulled the illegal fish out of the water or illegally shot the animal before a violation could be found. This hardly makes *633 sense. We are not obliged to construe statutes in a way that results in absurd consequences. See State v. Riles, 135 Wash.2d 326, 340, 957 P.2d 655 (1998); see also Wright v. Engum, 124 Wash.2d 343, 351-52, 878 P.2d 1198 (1994) ("As a rule of statutory interpretation, courts construe statutes to avoid `absurd or strained consequences'."). For all of the foregoing reasons, Brown's authority as a fish and wildlife officer to make warrantless arrests is clear.
An additional reason for believing Brown was qualifiedly immune from liability is that even if we were to interpret former RCW 75.10.020(2) as requiring the commission of a misdemeanor in the officer's presence, then it would appear Staats actually violated former RCW 75.20.100 in Brown's presence after all. RCW 75.20.100 is violated when a person begins a construction project within the bed of a river "without first having obtained" a hydraulics permit. On June 1, 1993, the first day fish and wildlife officers were present on Staats' property, officer Woltring observed bulldozing work, which deposited rocks and debris below the high water mark of the Snake River. Woltring conveyed his observations to Brown that day, and Brown personally observed the deposited materials. A habitat manager, in Brown's presence, also verified deposits had been made in the bed of the river. Staats then confirmed he had done this work without first obtaining a hydraulics permit. Thus, Brown had probable cause at that point to believe Staats had violated the statute; the violation occurred in Brown's presence and he could have issued a citation on the spot. See State v. Graham, 130 Wash.2d 711, 927 P.2d 227, 65 A.L.R.5th 773 (1996) (probable cause exists based on the facts and circumstances known to the officer at the time). The fact he waited three months to issue the citation, hoping Staats and the Department could work out a plan for revegetation of the site, does not alter the fact Brown had personal knowledge Staats violated the statute.
The majority believes Brown had to have contemporaneous information in June regarding the violation of the statute; that is, he had to know Staats "commenced" work; this is an absurd interpretation of the statute. Literally, under the majority's analysis, if fish and wildlife officers encountered a sweeping violation of RCW 75.20.100evidence the bank of a river had been bulldozed, bulldozers parked about the site, and work busily being undertakenthe day after work commenced on the project, then they could not cite the owner of the property because the work had not "commenced" on that specific day. Again, we are not obliged to give interpretation to a statute that results in such an absurd consequence. See Riles, 135 Wash.2d at 340, 957 P.2d 655.
Notwithstanding his own observations on June 1, 1993, Brown was entitled to rely on the information conveyed to him by officer Woltring to support his probable cause determination that a violation of former RCW 75.20.100 had occurred. See Torrey v. City of Tukwila, 76 Wash.App. 32, 39, 882 P.2d 799 (1994) (under the fellow officer rule, information conveyed by one law enforcement officer to another is sufficient to support probable cause). See also State v. Maesse, 29 Wash.App. 642, 646-47, 629 P.2d 1349 (an arresting officer who does not personally possess sufficient information to constitute probable cause may still make a warrantless arrest if he acts upon the direction or as a result of a communication from a fellow officer), review denied, 96 Wash.2d 1009 (1981).
Additionally, even as late as September, Brown had contemporaneous information Staats had violated former RCW 75.20.100. Apparently, Staats agreed to enter into a deferred prosecution with the State, which would have allowed Staats to avoid a conviction for the hydraulics violation if he agreed to restore and revegetate the riverbank. Clerk's Papers at 102, 104; Supplemental Br. of Pet'r at 29; Staats v. Brown, No. 15846-2-III, 1997 WL 716538, at *1 (Wash.App. Nov. 18, 1997) (unpublished opinion). But, by September, Staats still had not obtained a permit or undertaken any restoration work.
Brown's stated purpose for his September visit to Staats' property was to present a formal restoration plan to Staats so he would know what was required for his deferred *634 prosecution.[7] The citation was intended to put the deferred prosecution process in motion. Accordingly, Brown was discharging his duties when he went to Staats' house to discuss the deferred prosecution. During his visit, Brown re-examined the site and "confirmed the work had caused surface material to be exposed, that the vegetation had been uprooted or buried, and that material was left free to weather and wash into the river bed area." Clerk's Papers at 138. Thus, Brown had contemporaneous knowledge Staats had violated, and remained in violation of, the statute.
Finally, under federal law, an officer's actual or good faith belief he or she has probable cause to arrest is a complete defense to liability for an action under § 1983 arising out of an arrest. See Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); see also Creighton, 483 U.S. at 641, 107 S.Ct. 3034 (an officer who reasonably but mistakenly concludes that probable cause is present is entitled to qualified immunity). Here, Brown reasonably believed he had probable cause to cite or arrest Staats for a violation of former RCW 75.20.100, given the plain language of the Fisheries Code permitting warrantless arrests. A reasonable officer, reading former RCW 75.10.020(2), would believe he or she could make a warrantless arrest.
The majority's interpretation of former RCW 75.20.100 and former RCW 75.10.020 is strained and results in absurd consequences. If we adopt the view of former RCW 75.10.020 suggested by the majority here, we effectively gut any enforcement authority for the Department of Fish and Wildlife with respect to nearly all fish and wildlife violations. Our interpretation of the enforcement statute runs contrary to the specific language of the statute and the specific legislative intent manifested in numerous amendments to the law, including the most recent amendments in the 1998 legislative session. Such an interpretation would not be beneficial to the preservation of natural resources in our state.
Agent Brown enjoyed qualified immunity from any liability for both state law-related claims and federal claims. However, Staats has stated a cause of action under 42 U.S.C. § 1983 for Brown's alleged excessive use of force in effecting Staats' arrest.[8] Thus, I would affirm the trial court with the exception of the claim for excessive use of force under 42 U.S.C. § 1983.
GUY, C.J., and IRELAND, J., concur.
NOTES
[1] We do not reach consideration of collateral estoppel here, determining the case on other grounds.
[2] Notwithstanding the dissent's hyperbole that the majority's construction of former RCW 75.20.100 would result in "absurd consequences," "gut[ting] any enforcement authority for the Department of Fish and Wildlife with respect to nearly all fish and wildlife violations," Concurrence/dissent of Talmadge, J., at 14, this statute concerns only commencing construction without a permit, not every species of violation which the dissent claims to catch within its net.
[3] Brown further argues former RCW 75.10.020(2) authorized the arrest despite former RCW 10.31.100, which plainly prohibits such an arrest, because the former is more specific and therefore supersedes. Pet. for Review at 10 (citing Waste Management v. Utilities & Transp. Comm'n, 123 Wash.2d 621, 630, 869 P.2d 1034 (1994)). This argument has the same failing as noted above for absence of a current violation. Moreover it requires us to assume that RCW 10.31.100 is a "general" statute when in fact it is very specific, listing detailed exceptions to the general rule that an officer may not arrest someone for a misdemeanor not committed in his presence.

RCW 10.31.100 specifically lists over 20 titles and sections of the RCW where a warrantless misdemeanor arrest would be valid even if the officer were not present. For example it enumerates the use or possession of cannabis, RCW 10.31.100(1), where an arrest may be made with probable cause even if the crime is not committed in the officer's presence. However the misdemeanor for which Staats was arrested is omitted from the litany. Under these circumstances application of the doctrine of expressio unius est exclusio alterius ("[T]he expression of one thing is the exclusion of another.") (Black's Law Dictionary 581 (6th ed.1990)) leads us to conclude the enumerated statutory exceptions to the warrant requirement are exclusive, rendering the statutory subject of this citation nonarrestable if committed outside the officer's presence.
[4] An example of the legislature specifically extending common law arrest powers can be found in its reaction to our holding in Hornaday that alcohol on a minor's breath did not constitute a misdemeanor committed in the officer's presence. State v. Hornaday, 105 Wash.2d 120, 130, 713 P.2d 71 (1986). The legislature subsequently amended the statute to add minor possession of alcohol explicitly to the list of offenses for which officers may arrest without the crime being committed in their presence. State v. Preston, 66 Wash.App. 494, 497, 832 P.2d 513 (1992) (quoting former RCW 10.31.100(1)).
[5] State and federal courts have concurrent jurisdiction over § 1983 actions. Robinson v. City of Seattle, 119 Wash.2d 34, 57, 830 P.2d 318 (1992).
[6] Brown cites a plethora of federal cases to support his claim of qualified immunity; however, all involve substantially different factual settings, either by recounting a significantly lower amount of force, or establishing a significantly greater grounds for use of such force, or both. For example, in Foote v. Dunagan, the arresting officer attempted to grab the car keys and remove and prevent an armed and dangerous suspect from fleeing in a vehicle. 33 F.3d 445, 449 (4th Cir.1994). The only force used in Moore v. Gwinnett County, was the officer held a pregnant woman, who had already fled once, around the stomach. 967 F.2d 1495, 1499 (11th Cir.1992). As the court pointed out, the arresting officer "did not strike Moore, throw her to the ground, pull her against him, or use or brandish a weapon." Id. (emphasis added). In Swanson v. Fields, the court found that the force used was not excessive when the arrestees had been verbally abusive and somewhat violent. 814 F.Supp. 1007, 1017 (D.Kan.1993). But, even there, the only force used on one arrestee was that he was grabbed by the neck and handcuffed. "Sheriff Fields never struck, knocked down, hit or kicked Kenneth." Id. (emphasis added). His wife was pushed against the car only after she broke free of the officer twice, and was handcuffed only after she had struck the officer. The officer never "struck, kicked or hit Nancy during their struggles." Id. at 1017-18.
[7] Staats clearly pleaded an unconstitutional search of his residence in his complaint. CP at 4. The state's motion for summary judgment to dismiss this claim was premised upon an alleged qualified immunity to the false arrest claim (CP at 82, 89, 94), which the state (mistakenly) claimed was dependent upon the illegal search claim as well ("[T]he issue of false arrest is the linchpin for plaintiffs' case. Each cause of action is premised on this allegation."). CP at 89. The state likewise defended the trial court's judgment on the same basis before the Court of Appeals. Without specific discussion of the issue, the Court of Appeals held: "Summary judgment dismissing Mr. Staats' claims based on the doctrine of qualified immunity was error," Staats v. Brown, No. 15846-2-III, slip op. at 6, 1997 WL 716538 (Wash.Ct.App. Nov.18, 1997) (emphasis added), thereby remanding for trial on all issues. The state's petition for review to this court referenced only the false arrest issue, which leads the dissent to claim only that issue is now properly before us. Although we could refrain from discussing the merits of this issue thereby tacitly allowing the Court of Appeals general remand to return it to the trial court for further proceeding, we elect to analyze the search claim on the merits as an alternative basis to affirm the Court of Appeals. See RAP 13.7(b) ("If the Supreme Court reverses a decision of the Court of Appeals that did not consider all of the issues raised which might support that decision, the Supreme Court will either consider and decide those issues or remand the case to the Court of Appeals to decide those issues.").
[8] Staats does not challenge state qualified immunity under RCW 4.92.090 which provides the State of Washington "shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."
[9] To the extent Altshuler v. City of Seattle, 63 Wash.App. 389, 819 P.2d 393 (1991) states otherwise, it is disapproved. The "clearly established" rule in federal jurisprudence is based upon congressional intent at the time the Civil Rights Act of 1871 was enacted. Wyatt v. Cole, 504 U.S. 158, 163-64, 112 S.Ct. 1827, 1831, 118 L.Ed.2d 504 (1992). State qualified immunity, however, stems from quite different legal principles as summarized in Guffey.
[10] As a peace officer, we require Brown to be aware of the rules and statutes governing arrest. See Maynard Inv. Co. v. McCann, 77 Wash.2d 616, 624, 465 P.2d 657 (1970) (every citizen is expected to know the law); Coffel v. Clallam County, 58 Wash.App. 517, 523, 794 P.2d 513 (1990) ("Police officers are presumed to know the penal laws.").
[11] Subjectively, there is also much in the record to indicate that Brown's decision to arrest Staats was not the result of passionless police work, but a hasty act taken in anger and frustration. Brown apparently felt abused by Staats, who, according to Brown, challenged the state's right to control his work. CP at 51. In their final confrontation, according to Brown, Staats "made several references to me as a `NAZI' and that this is nothing more than a `Police State' and other comments about my position." CP at 52.
[1] The statute has essentially been recodified at RCW 77.12.090.
[1] Repealed by Laws of 1998, ch. 190, § 124.
[2] Id.
[1] "In this case, Mr. Staats has alleged that Officer Brown not only entered his property on the Snake River, but also entered his residence (purportedly to obtain identification information)." Br. of Appellant at 10.
[2] RAP 10.3(a)(3) requires "[a] separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error."
[3] Repeated by Laws of 1998, ch. 190, § 124.
[4] Id.
[5] Id.
[6] Indeed, as we noted in State v. Mierz, 127 Wash.2d 460, 472 n. 8, 901 P.2d 286 (1995), "Wildlife [officers] have statutory authority to make warrantless searches, seizures, and arrest under certain circumstances [,]" under authority expressly provided for in Title 77 RCW.
[7] The district court also noted Brown "returned for the purpose of again observing the site and for the purpose of issuing [the citation]." Clerk's Papers at 139.
[8] The majority spends considerable time discussing the force employed by Brown to subdue Staats and, if entirely true, Staats states a § 1983 claim against Brown. It is noteworthy, however, that the story is not so one-sided as the majority portrays itBrown found a handgun on Staats' person during the arrest. The trier of fact should have the opportunity to sift out the respective stories.