RAWLINSON, Circuit Judge,
dissenting:
I respectfully dissent from the majority opinion which, in my view, improperly imports Fourth Amendment analysis into calculation of a sentence under the Sentencing Guidelines, and unnecessarily creates a circuit split.
I agree with the majority that the term arrest as it is commonly used denotes taking or detaining an individual into custody by authority of law. I do not agree that the concept of custody for the purpose of criminal history calculation is coextensive with a formal arrest that includes Miranda warnings, handcuffs and a trip to the police station.
It is important to remember that we are considering the definition of arrest for the purpose of assessing recidivism as part of the criminal history calculation. We are not assessing whether a Fourth Amendment violation occurred, whether Miranda warnings were required, or whether some different constitutional right was triggered. There is nothing new or unusual about recognizing that the process of imposing a sentence does not invoke the same protections as those procedures governed by various provisions of the United States Constitution. Indeed, we have routinely eschewed constitutional protection for various aspects of the sentencing process. See, e.g., United States v. Mercado, 474 F.3d 654, 656-57 (9th Cir.2007) (holding that a sentencing court’s consideration of acquitted conduct did not violate the Constitution); United States v. BarraganEspinoza, 350 F.3d 978, 983 (9th Cir.2003) (rejecting a constitutional challenge to the consideration of uncharged conduct in applying a sentencing enhancement); United States v. Vanderwerfhorst, 576 F.3d 929, 935 (9th Cir.2009) (“A sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come....”) (citation, alteration and internal quotation marks omitted). Rather than being coextensive with the contours of the Fourth, Fifth or Sixth Amendment principles, parameters for sentencing are intentionally broad. See id. And as the Supreme Court has noted, “recidivism is as typical a sentencing factor as one might imagine.” Ewing v. California, 538 U.S. 11, 25, 123 S.Ct. 1179, 155 L.Ed.2d 108 (citation and internal quotation marks omitted).
Considering the broad scope of information that a sentencing judge may consider and the importance of the recidivism factor in fashioning an appropriate sentence, I am persuaded that the Seventh Circuit’s interpretation of “intervening arrest” comports more closely with the permissibly broad scope of sentencing considerations than the restrictive definition advanced by my colleagues.
In United States v. Morgan, 354 F.3d 621 (7th Cir.2003), the Seventh Circuit ruled that the term “intervening arrest” encompassed a traffic citation. See id. at *1047 623. The Seventh Circuit noted that Morgan “was halted and prevented from leaving until the officer released him....” Id. The Seventh Circuit reasoned that a traffic citation, unlike a complaint and identical to a custodial arrest, is predicated on probable cause. See id. at 624. The Seventh Circuit concluded that classifying a traffic stop followed by a citation as an arrest comported with the intent of the United States Sentencing Guidelines “because it is the apprehension followed by a new offense that identifies the recidivist....” Id.
The Seventh Circuit relied on Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) and United States v. Childs, 277 F.3d 947 (7th Cir.2002) (en banc) to supports its conclusion. See id.
In Whren, the United States .Supreme Court described “the temporary detention of a motorist who the police have probable cause to believe has committed a civil traffic violation,” 517 U.S. at 808, 116 S.Ct. 1769, as “a traffic violation-arrest ...” Id. at 813, 116 S.Ct. 1769. Other Supreme Court decisions lend support to that description. See, e.g., Atwater v. City of Lago Vista, 532 U.S. 318, 352, 353 n. 25, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (seeming to make a distinction between custodial arrest and a citation, a non-custodial arrest, but an arrest nevertheless); Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (defining custody as an encounter with law enforcement where the detainee would not feel at liberty to terminate the encounter).
In Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court struggled with the application of Miranda in the context of a traffic stop. See id. at 437, 104 S.Ct. 3138. The Supreme Court acknowledged that “few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so____” Id. at 436, 104 S.Ct. 3138 (footnote reference omitted). The Court noted that it had “long acknowledged that stopping an automobile and detaining its occupants constitute a seizure within the meaning of the Fourth Amendment ...” Id. at 436-37, 104 S.Ct. 3138 (citation, alteration and internal quotation marks omitted). Although the Court ultimately concluded that a traffic detention did not trigger Miranda protections, it stopped far short of labeling a traffic detention a non-arrest. See id. at 439 n. 29, 104 S.Ct. 3138 (“.We of course do not suggest that a traffic stop supported by probable cause may not exceed the bounds set by the Fourth Amendment on the scope of a Terry stop.”). In a similar vein, Knowles v. Iowa, 525 U.S. 113, 117, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) made a distinction between a “formal arrest” and, presumably, an “informal arrest” and between a “custodial arrest” and presumably, a “noncustodial arrest.” However, this distinction, like the ones made in Whren, Atwater, Thompson and Berkemer were all made in the context of deciding whether violations of the Fourth, Fifth or Sixth Amendments had occurred. No similar constitutional implications arise in the much broader context of making a recidivism determination for the purpose of sentencing. In sum, no Supreme Court case compels the cabined definition of arrest formulated by the majority.
In fact, the Supreme Court has specifically cautioned against the approach taken by the majority. In Dunaway v. New York, 442 U.S. 200, 212, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the Court observed that “[t]he mere facts that petitioner was not told he was under arrest, was not ‘booked’ and would not have had an arrest record” did not negate the custodial nature of the seizure. See also id. at 213, 99 S.Ct. *1048 2248 (cautioning against relying on “technical arrests” to invoke constitutional protections); id. at 214, 99 S.Ct. 2248 (classifying detention as requiring probable cause “whether or not it is technically characterized as an arrest ... ”); id. (noting that although the arrest in Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)) “had more of the trappings of a technical formal arrest than petitioner’s, such differences in form must not be exalted over substance.... ” (footnote reference omitted).
The discussion in the majority opinion equating a traffic citation arrest to a charged offense, see Majority Opinion pp. 1043-44, proves absolutely nothing. Precisely the same argument can be made regarding a traditional custodial arrest, which also results in charges. See, e.g., Ewing v. City of Stockton, 588 F.3d 1218, 1223 n. 5 (9th Cir.2009) (referring to an “arrest on ... charges”); see also, United States v. Gallegos, 613 F.3d 1211, 1213 (9th Cir.2010) (noting that Gallegos was arrested on an “illegal reentry charge”); Luchtel v. Hagemann, 623 F.3d 975, 981 (9th Cir.2010) (“A person does not have the right to resist arrest even if the charges are false ... ”) (citation and alteration omitted).
The Seventh Circuit in Childs read the Supreme Court precedent as not precluding the inclusion of traffic stops within the definition of arrest. See Childs, 277 F.3d at 953. The Seventh Circuit subsequently relied on Childs to hold explicitly that a traffic stop resulting in detention constituted an arrest for the purpose of applying the sentencing guidelines. See Morgan, 354 F.3d at 624. In my view, the majority creates an unnecessary circuit split with its contrary determination. I agree with the majority that a defendant’s criminal history should not be overstated. But neither should it be understated. See U.S.S.G. § 4A1.2 cmt. 3 (2009) (providing for an upward departure if the criminal history score underrepresents the seriousness of defendant’s past crimes). Treating a traffic citation as a non-event seriously undermines the recidivism consideration of the guidelines and understates the criminal history of repeat offenders. I would follow the Seventh Circuit’s analysis and affirm the sentence imposed by the district court.