**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 30 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| ARTHUR MOORE, individually and as successor in interest of Xavier Moore, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> CITY OF BERKELEY, a municipal corporation; et al., <br><br> Defendants-Appellees. | No. 18-15647 <br><br> D.C. No. 3:14-cv-00669-CRB <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted January 9, 2020
San Francisco, California

Before: WALLACE and FRIEDLAND, Circuit Judges, and LASNIK,** District
Judge.

This case arose from the tragic death of Xavier "Kayla" Moore. Late one

night in February 2013, officers of the Berkeley Police Department responded to a

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Robert S. Lasnik, United States District Judge for the
Western District of Washington, sitting by designation.

call from Moore's roommate, whom Moore had kicked out of their apartment. The roommate told the officers that Moore was schizophrenic, had not been taking her medication, and had been drinking and using drugs all day. The roommate also expressed a fear for his safety and suggested that the officers may need to detain Moore for a mental health evaluation. When they arrived at Moore's apartment, Officers Gwendolyn Brown and Kenneth Tu had a lengthy conversation with Moore, during which she spoke incoherently and appeared to be experiencing paranoia. Brown and Tu determined that they needed to take Moore into custody for a mental health evaluation, and attempted to handcuff her. A struggle ensued; it eventually took six officers to subdue her. Almost immediately after Moore ceased struggling, she stopped breathing. She died despite efforts to revive her.

Moore's father ("Plaintiff") brought this action against the officers involved (collectively, "Defendants"). The district court granted summary judgment to Defendants on all of Plaintiff's claims. Reviewing de novo, and evaluating the evidence in the light most favorable to Plaintiff, *Sharp v. County of Orange*, 871 F.3d 901, 909 (9th Cir. 2017), we affirm.[1]

1. The district court did not err in granting summary judgment on Plaintiff's

---

[1] In reaching this conclusion, we have not considered the portions of Plaintiff's excerpts of record that were not before the district court when it ruled on the claims that are the subject of this appeal. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

Fourth Amendment unlawful arrest claim. A § 1983 claim for unlawful arrest fails if the arresting officers had probable cause for the arrest. *See Luchtel v. Hagemann*, 623 F.3d 975, 979 (9th Cir. 2010). Under California law, "[w]hen a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer . . . may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention." Cal. Welf. & Inst. Code § 5150(a). Here, Defendants had probable cause to detain Moore pursuant to § 5150. Moore had forced her roommate out of their apartment in the middle of the night, and the roommate told Defendants that "he thought Moore was going to attack him and that he feared for his safety." He explained that, on past occasions, Moore had picked up kitchen knives in the apartment and threatened to use them. Moore was also agitated and angry at various points during her conversation with Officer Brown. In those circumstances, Defendants had reason to be concerned that Moore was "a danger to others." *See* Cal. Welf. & Inst. Code § 5150(a); *Bias v. Moynihan*, 508 F.3d 1212, 1220-21 (9th Cir. 2007).

2. The district court likewise did not err in granting summary judgment on Plaintiff's Fourth Amendment excessive force claim. An excessive force claim fails if the officers' use of force was objectively reasonable under the Fourth Amendment. *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011). It

is undisputed that Moore, who was a very large and strong person, resisted vigorously when Defendants tried to take her into custody. Defendants consistently testified that they used only the amount of force necessary to restrain Moore, that they did not apply pressure on areas of her body that would have restricted her breathing, and that they moved her into a recovery position as soon as she stopped struggling. Although we must scrutinize with particular diligence "officers' version of events" where "the person most likely to rebut [their account]—the one killed—can't testify," *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014), Plaintiff has neither produced evidence to controvert Defendants' testimony nor identified material inconsistencies in their statements. Plaintiff has thus failed to show a genuine dispute of material fact that would preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

3. Plaintiff's Fourteenth Amendment substantive due process claim fails because there is no evidence that Defendants acted with either "deliberate indifference" or "a purpose to harm." *See Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Plaintiff criticizes as an "ill-conceived ruse" Officer Brown's telling Moore that she had an outstanding warrant to clear up. Brown explained,

4

however, that her decision to say this to try to convince Moore to leave with the officers was informed by her experience that individuals like Moore who "have been detained under [section] 5150 multiple times in the past often get upset and angry" when they are told "they are being taken into protective custody under section 5150." Plaintiff has pointed to no evidence that casts doubt on Brown's proffered justification.

4. Finally, we discern no error in the district court's resolution of Plaintiff's state law claims. Plaintiff's battery and Bane Act claims fail for the same reason as his excessive force claim under federal law—the force Defendants used during the struggle with Moore was not unreasonable. *See Susag v. City of Lake Forest*, 115 Cal. Rptr. 2d 269, 276 (Ct. App. 2002); *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013).

Plaintiff's wrongful death claim is based on allegations of Defendants' negligence. Liability for negligence under California law, which attaches to "[l]aw enforcement personnel's tactical conduct and decisions preceding the use of deadly force," is broader than liability for excessive force under federal law, which "tends to focus more narrowly . . . on the moment when deadly force is used." *Hayes v. County of San Diego*, 305 P.3d 252, 262-63 (Cal. 2013). Here, however, Defendants here did not use *deadly* force. *See Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005) (en banc) ("[D]eadly force [is] force that creates a

5

substantial risk of causing death or serious bodily injury.").  As discussed above, there is no evidence that Defendants applied force in a way that restricted Moore's breathing.  And both parties' medical experts opined that Moore's death was caused at least in part by her preexisting heart condition, of which Defendants were not aware.

We recognize how distressing it is for an effort to check on an individual's welfare to end with the death of the person whom the check was intended to protect.  We also recognize that a large community continues to grieve Moore's death.  But whatever role Defendants may have played in her death, we cannot say on the evidence before us that they acted unlawfully.  Accordingly, the judgment is

**AFFIRMED.**