**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 21 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MAX J. ANDERSON,<br><br>              Plaintiff - Appellant,<br><br>    v.<br><br>CITY OF BAINBRIDGE ISLAND, a municipal corporation; RICHARD CHRISTOPHERSON, in his capacity as a police officer for the City of Bainbridge Island and as an individual; GUY ROCHE, in his capacity as a police officer for the City of Bainbridge Island, and as an individual,<br><br>              Defendants - Appellees. | No. 10-36140<br><br>D.C. No. 3:09-cv-05797-RBL<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted February 10, 2012
Seattle, Washington

Before: SCHROEDER, ALARCÓN, and GOULD, Circuit Judges.

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Appellant, Max Anderson, appeals the district court's order granting summary judgment to Appellees—City of Bainbridge Island, Richard Christopherson, and Guy Roche—in his 42 U.S.C. § 1983 action alleging that Officers Christopherson and Roche violated his Fourth Amendment rights by using excessive force during his arrest. The district court held that the officers' actions were reasonable as a matter of law, and that, in the alternative, the officers were entitled to qualified immunity. The district court also granted summary judgment in favor of Appellees on Anderson's state law tort claim of assault. We affirm.

Sometime after midnight on October 28, 2007, Officers Christopherson and Roche were parked on Bainbridge Island when they observed a vehicle, traveling at a high speed, pass a van in a no-passing zone. The police officers turned on their emergency lights to follow. The vehicle then led them on a high-speed chase at 85 m.p.h., in a 55 m.p.h. zone, until the vehicle's driver turned the headlights off and pulled into an industrial parking lot. The driver of the vehicle, Anderson, later declared that he had then parked behind a trailer to hide from the officers. The officers called for backup protection, and they drove into the parking lot after the requested two additional units arrived. As the officers drove into the parking lot, they saw someone approaching them on foot with his hands in the air and a driver's license in his right hand. The officers then drove to within fifteen to thirty

feet of Anderson, and placed a police car spotlight on him. The police exited their vehicles, pointed their guns at Anderson's chest, ordered him to turn around and get on the ground. Their guns were pointed at him for approximately thirty seconds before he was handcuffed and arrested.

In claiming that the officers' use of force was excessive, Anderson stresses that he was not, in fact, a threat and that the officers knew him as the son of one of their colleagues. He argues on appeal that there is a material issue of fact as to whether, as he was walking toward the officers, they recognized him and therefore should have known that because he was the son of a police officer he was not a threat.

Anderson asserts in his deposition that the officers recognized him as the son of a coworker. We first observe that this is a conclusory and speculative assertion about the officers' state of mind. The officers have said they did not recognize him. To raise a genuine issue of material fact, the assertion made by the non-moving party must be properly supported by admissible evidence. Fed. R. Civ. P. 56(e). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The dispositive issue in the case with regard to the defendants' liability is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The issue is thus whether in the early morning hour in question, the officers' conduct was objectively reasonable in considering Anderson to be a possible threat. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (internal quotation marks and citation omitted).

Even assuming the officers did recognize Anderson after he exited the vehicle, the issue remains whether the officers' conduct was objectively reasonable in light of all the circumstances. The officers' personal recognition would not necessarily matter if there were objective reasons supporting the level of force used. *See Ryburn v. Huff*, 132 S. Ct. 987, 991 (2012) (warning judges to "be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation").

In this case, the district court found that the officers used the appropriate level of force to secure Anderson given the totality of the circumstances. As the

4

district court said, "Anderson was driving recklessly, [and] attempt[ed] to elude police . . . [by driving] without headlights in [a] dark, commercial park." Anderson created a dangerous situation by attempting to evade police in a late-night, high-speed chase. *See Scott v. Harris*, 550 U.S. 372, 384 (2007) (reasoning that the parties' relative culpability—who created the dangerous situation—is relevant to determining objective reasonableness). Accepting Anderson's version of events, the officers trained their guns on him for only thirty seconds, just long enough to determine that he was unarmed and to arrest him. Anderson relies on cases concerning weapons pointed at non-threatening individuals, exemplified by *Tekle v. United States*, 511 F.3d 839, 845–46 (9th Cir. 2007), where officers held a gun to the head of an eleven-year-old child. Anderson was not innocent, but a driver, whom the officers had observed breaking the law. The district court correctly held that the force used in this case was reasonable under the circumstances.

Because the force used was not excessive, we also affirm the district court's dismissal of Anderson's state law assault and battery claim. *See Boyles v. City of Kennewick*, 813 P.2d 178, 179 (Wash. Ct. App. 1991), *review denied*, 822 P.2d 288 (Wash. 1991).

**AFFIRMED**.

5

Anderson v. City of Bainbridge Island, 10-36140

GOULD, Circuit Judge, Dissenting:

I conclude that there is a genuine dispute of material fact whether the officers' use of force was excessive. We give Appellant the benefit of all justifiable inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 n.5 (9th Cir. 2004). Whether Appellees recognized Appellant is important in my view to whether there was a need for threatened deadly force. *Tekle v. United States*, 511 F.3d 839, 844–45 (9th Cir. 2007).

Appellant has provided sufficient evidence from which a jury could infer that the officers knew his identity when they pointed their guns at him. Both officers worked with Appellant's father. Appellant had attended Officer Roche's wedding. Officer Roche had been a social guest at Appellant's parents' house. Officer Christopherson had pulled Appellant over for speeding not long before this incident. At the time when deadly force was threatened by pointing guns at Appellant, he was lit up with a bright spotlight and not too far away from the officers, perhaps a distance of fifteen to thirty feet. A jury may permissibly infer from these facts that the officers recognized Appellant before drawing their weapons. That evidence makes Max Anderson's contention that the officers recognized him more than "[c]onclusory, speculative testimony . . . insufficient to

raise genuine issues of fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). That salient fact, at least on Appellant's version of the evidence which is credited for summary judgment purposes, requires reversal.

If a jury determined that Appellees recognized Appellant, it could rationally also determine that because the officers knew who Appellant was, they knew that he was not a threat posing danger when he walked forward with hands in the air. Upon recognition, this obviously would be a case of a teenage (Max Anderson was sixteen years old at the time) driver's serious driving misadventure. There were at least three bad mistakes: passing a van in a no pass zone, leading police on a high speed chase at speeds up to 85 m.p.h. when the limit was 55 m.p.h., and trying to evade the police stop by speeding and hiding to avoid punishment. This is more than one serious lapse of judgment. But those occur with teenagers from time to time, and it would not seem to pose a threat to officer safety once Max Anderson walked forward with hands in the air. I do not suggest that police generally may treat more favorably those they know, as compared to strangers. But here the governing legal standard asks us to assess danger and need for force in the total circumstances. If Officers Christopherson and Roche knew the identity of Max Anderson when they drew their guns, a jury could reasonably infer that they did not then have an objectively justifiable fear of danger. Pointing a gun at a person

is a high level of force,[1] and a jury could perceive that there was no need for threatened deadly force if the officers had recognized Appellant. A jury rationally could conclude, when balancing the level of deployed force against the need for that force, that the Officers' use of force was objectively unreasonable. For example, if Max Anderson was recognized before guns were drawn, then a jury could rationally decide that it was objectively unreasonable of the officers to threaten deadly force to teach a teenager a lesson. I respectfully dissent, believing that Appellant's case should have gone to a jury, which would be in a position to resolve disputed facts and then apply the correct legal standard.[2]

---

[1]A much lower level of force would be presented by an officer bringing a gun to a "low ready" position without aiming it at a person, but here on summary judgment we accept Appellant's factual version that two guns were pointed at him.

[2] I would also reverse the district court's decision that the officers were entitled to qualified immunity. The excessive force standard is clearly established such that a reasonable official would have known his or her actions were not lawful. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (as modified by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Also, because the State of Washington does not recognize qualified immunity for a claim of assault and battery arising from the use of excessive force to effectuate an arrest, I would reverse the dismissal of the state law claim. *Staats v. Brown*, 991 P.2d 615, 627–28 (Wash. 2000).