GOULD, Circuit Judge,
Dissenting:
I conclude that there is a genuine dispute of material fact whether the officers’ use of force was excessive. We give Appellant the benefit of all justifiable inferences: Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1115 n. 5 (9th Cir.2004). Whether Appellees recognized Appellant is important in my view to whether there was a need for threatened deadly force. Telele v. United States, 511 F.3d 839, 844-45 (9th Cir.2007).
Appellant has provided sufficient evidence from which a jury could infer that the officers knew his identity when they pointed their guns at him. Both officers worked with Appellant’s father. Appellant had attended Officer Roche’s wedding. Officer Roche had been a social guest at Appellant’s parents’ house. Officer Christopherson had pulled Appellant over for speeding not long before this incident. At the time when deadly force was threatened by pointing guns at Appellant, he was lit up with a bright spotlight and not too far away from the officers, perhaps a distance of fifteen to thirty feet. A jury may permissibly infer from these facts that the officers recognized Appellant before drawing their weapons. That evidence makes Max Anderson’s contention that the officers recognized him more than “[e]onclusory, speculative testimony ... insufficient to raise genuine issues of fact.” Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir.2007). That salient fact, at least on Appellant’s version of the evidence which is credited for summary judgment purposes, requires reversal.
If a jury determined that Appellees recognized Appellant, it could rationally also determine that because the officers knew who Appellant was, they knew that he was not a threat posing danger when he *541 walked forward with hands in the air. Upon recognition, this obviously would be a case of a teenage (Max Anderson was sixteen years old at the time) driver’s serious driving misadventure. There were at least three bad mistakes: passing a van in a no pass zone, leading police on a high speed chase at speeds up to 85 m.p.h. when the limit was 55 m.p.h., and trying to evade the police stop by speeding and hiding to avoid punishment. This is more than one serious lapse of judgment. But those occur with teenagers from time to time, and it would not seem to pose a threat to officer safety once Max Anderson walked forward with hands in the air. I do not suggest that police generally may treat more favorably those they know, as compared to strangers. But here the governing legal standard asks us to assess danger and need for force in the total circumstances. If Officers Christopherson and Roche knew the identity of Max Anderson when they drew their guns, a jury could reasonably infer that they did not then have an objectively justifiable fear of danger. Pointing a gun at a person is a high level of force,[1] and a jury could perceive that there was no need for threatened deadly force if the officers had recognized Appellant. A jury rationally could conclude, when balancing the level of deployed force against the need for that force, that the Officers’ use of force was objectively unreasonable. For example, if Max Anderson was recognized before guns were drawn, then a jury could rationally decide that it was objectively unreasonable of the officers to threaten deadly force to teach a teenager a lesson. I respectfully dissent, believing that Appellant’s case should have gone to a jury, which would be in a position to resolve disputed facts and then apply the correct legal standard.[2]

. A much lower level of force would be presented by an officer bringing a gun to a "low ready” position without aiming it at a person, but here on summary judgment we accept Appellant’s factual version that two guns were pointed at him.

. I would also reverse the district court’s decision that the officers were entitled to qualified immunity. The excessive force standard is clearly established such that a reasonable official would have known his or her actions were not lawful. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (as modified by Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).
Also, because the State of Washington does not recognize qualified immunity for a claim of assault and battery arising from the use of excessive force to effectuate an arrest, I would reverse the dismissal of the state law claim. Staats v. Brown, 139 Wash.2d 757, 991 P.2d 615, 627-28 (2000).